# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 23, 2010      Decided January 18, 2011

No. 09-5386

AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL
LIBERTIES UNION FOUNDATION,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF DEFENSE AND CENTRAL
INTELLIGENCE AGENCY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00437)

*Benjamin E. Wizner* argued the cause for appellants. With him on the briefs was *Arthur B. Spitzer*.

*Michael P. Abate*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Ronald C. Machen*, U.S. Attorney, and *Douglas N. Letter*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GRIFFITH, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Appellants, the American Civil Liberties Union and the American Civil Liberties Foundation (jointly "ACLU"), submitted Freedom of Information Act ("FOIA") requests to the Department of Defense and the Central Intelligence Agency ("CIA") seeking documents related to fourteen "high value" detainees held at the U.S. Naval Base in Guantanamo Bay, Cuba. In response, the government released redacted versions of the requested documents, from which specific information relating to the capture, detention, and interrogation of the detainees had been withheld. The government defended the redactions as justified by FOIA exemptions 1 and 3, which permit the government to withhold information related to "intelligence sources and methods." We agree with the district court that the information withheld by the government was exempt from FOIA disclosure. We also conclude that the district court did not abuse its discretion by declining to perform *in camera* review. For these reasons, we affirm the judgment of the district court.

## I. Background

Since January of 2002, the United States has operated a detention facility at the United States Naval Base at Guantanamo Bay, Cuba, for detainees captured in the war on terror. In a September 2006 speech, President Bush revealed that fourteen "suspected terrorist leaders and operatives" had been held and questioned outside of the United States in a separate program operated by the CIA. Remarks on the War on Terror, 42 WEEKLY COMP. PRES. DOC. 1569, 1570 (Sept. 6, 2006). In his speech, the President announced that this program had been discontinued and that the fourteen detainees were being transferred to Guantanamo Bay. *Id.* at

1573-74. After their transfer, these so-called "high value" detainees received hearings before Combatant Status Review Tribunals ("CSRTs").

Although the Department of Defense had publicly posted redacted transcripts of the detainees' CSRT proceedings, the ACLU submitted Freedom of Information Act requests to the Department seeking full CSRT transcripts of the 14 detainees and all records provided to the CSRTs by or on behalf of the detainees. In response to the request, the government identified and released the following:

eight unclassified CSRT transcripts;

six redacted CSRT transcripts;

an unclassified version of a one-page document submitted by detainee Abu Zubayduh to the CSRT;

an unclassified version of two pages of "Detainee Session Notes" prepared by the Personal Representative of detainee Majid Khan and submitted to the CSRT;

a redacted version of a two-page written statement of detainee Khalid Sheikh Muhammad that was submitted to the CSRT;

a redacted version of a seven-page written statement of detainee Hambali that was submitted to the CSRT; and

a redacted version of a one-page written statement of detainee Bin Lap that was submitted to the CSRT.

From the redacted documents, the CIA withheld all information relating to the capture, detention, and interrogation of the "high value" detainees.

The ACLU filed the present action in the district court challenging the government's withholdings. The government stood by its withholdings and filed affidavits in support of its position. The government principally relied on the affidavit of Wendy Hilton, the Associate Information Review Officer of the National Clandestine Service of the CIA, to justify the redactions as information protected by FOIA exemptions 1 and 3. *See* 5 U.S.C. § 552(b) (listing nine exemptions from FOIA disclosure requirements). Exemption 1 provides for the exemption of records that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1). As applicable to the claimed exemption in this case, Executive Order 12,958, as amended, sets out eight categories of information subject to classification, including "intelligence activities," "intelligence sources or methods," and the "foreign relations or foreign activities of the United States." Exec. Order No. 12,958 § 1.4(c)-(d), 60 Fed. Reg. 19,825 (Apr. 17, 1995), *as amended by* Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003) (hereinafter "Exec. Order No. 12,958"). Exemption 3 provides for the exemption of records that are "specifically exempted from disclosure by statute," thereby incorporating the protections of other shield statutes. 5 U.S.C. § 552(b)(3).

The government moved for summary judgment to dispose of the ACLU's lawsuit. On October 29, 2008, the district court granted the government's motion, ruling that the government had complied with the ACLU's FOIA request insofar as it was required to do so, and that it had provided sufficient support for the claimed exemptions. *See A.C.L.U. v. Dep't of Defense*, 584 F. Supp. 2d 19, 26 (D.D.C. 2008).

The ACLU appealed the district court's decision to this court, but before the parties filed their briefs, four events caused the government to reevaluate its redactions to the requested documents. First, in January 2009, President Obama issued three executive orders: Executive Order 13,491 limiting the use of interrogation techniques to those listed in the Army Field Manual and ordering the CIA to close any detention centers it operated; Executive Order 13,492 ordering the Department of Defense to close the detention facility at Guantanamo Bay within one year; and Executive Order 13,493 establishing a taskforce to review the lawful options available to the government with respect to the apprehension, detention, and disposition of suspected terrorists. *See* Exec. Order Nos. 13,491-93, 74 Fed. Reg. 4893-902 (Jan. 22, 2009). Second, in April 2009, President Obama declassified and released to the public four legal memoranda issued by the Department of Justice Office of Legal Counsel ("OLC") that discussed the legality of enhanced interrogation techniques. Third, also in April 2009, the New York Review of Books published a leaked report from the International Committee of the Red Cross ("Red Cross") that contained accounts of the treatment of the fourteen "high value" detainees while in CIA custody. Finally, in August 2009, the government released a declassified version of the CIA Inspector General's report that detailed the CIA's interrogation techniques and discussed certain aspects of the detainees' conditions of confinement.

At the government's request, we remanded the case to the district court to provide the CIA with the opportunity to "reprocess" the requested documents in light of the further developments. The CIA's additional efforts resulted in the release of one additional CSRT transcript in its entirety and the revision of the redactions to the remaining five transcripts and three detainee written statements. In August 2009, the government filed a new motion for summary judgment, relying on a second declaration from Wendy Hilton to support

its claim that the information still redacted after the CIA's reprocessing was exempt from release under FOIA exemptions 1 and 3. The district court granted the government's motion, *A.C.L.U. v. Dep't of Defense*, 664 F. Supp. 2d 72, 79 (D.D.C. 2009), and the ACLU appealed.

## II. FOIA Exemptions 1 and 3

The Freedom of Information Act "calls for broad disclosure of Government records." *C.I.A. v. Sims*, 471 U.S. 159, 166 (1985). However, Congress has recognized that "public disclosure is not always in the public interest," *id.* at 167, and has therefore provided the nine exemptions listed in 5 U.S.C. § 552(b). As we noted above, the government in this case supports its redactions on the basis of exemptions 1 and 3. As we further noted above, exemption 1 permits the government to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" if that information has been "properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In this case, the government argues that the redacted information was properly classified under Executive Order 12,958, which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information." Exec. Order No. 12,958.[1] Specifically, the government asserts that the information it withheld was classified as "intelligence sources or methods" pursuant to section 1.4(c) of Executive Order 12,958. *See id*. § 1.4 (listing the categories of information authorized to be classified).

---

[1]Executive Order 12,598 and all amendments thereto have since been superseded by Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).

Exemption 3 permits the government to withhold information "specifically exempted from disclosure by statute," if such statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The government relies on the National Security Act of 1947 to justify withholding the redacted information under exemption 3. We have previously held that the National Security Act, which also authorizes the Executive to withhold "intelligence sources and methods" from public disclosure, 50 U.S.C. § 403-1(i)(1), qualifies as an exemption statute under exemption 3. *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 761 (D.C. Cir. 1990).

An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions. Typically it does so by affidavit. We review the district court's decision on the adequacy of the agency's showing *de novo*. *Larson*, 565 F.3d at 862; *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007). Because courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case," *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993), we "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf*, 473 F.3d at 374 (quotations omitted); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the

affidavit alone. *Larson*, 565 F.3d at 862; *Wolf*, 473 F.3d at 374. Moreover, a reviewing court "must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf*, 473 F.3d at 374; *Halperin v. C.I.A.*, 629 F.2d 144, 149 (D.C. Cir. 1980). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson*, 565 F.3d at 862 (quoting *Wolf*, 473 F.3d at 374-75).

The ACLU challenges the CIA's claim that it was authorized to withhold the redacted information as "intelligence sources or methods" either under exemption 1 or under exemption 3 on several bases.[2] It first argues that the withheld information has already been declassified and is widely available to the public. Secondly, it contends that the interrogation techniques and conditions of confinement described in the requested documents have been prohibited by the President. Thirdly, it contends that the government lacks the authority to classify information derived from the detainee's personal observations and experiences. In addition, the ACLU argues that the government cannot withhold the information under exemption 1 because public release of the information would not damage national security—one of the prerequisites for classification under Executive Order 12,958. *See* Exec. Order No. 12,958 § 1.1 (listing four conditions that must be met to permit classification). We consider each of the ACLU's arguments in turn.

---

[2]We note that the government need not prevail on both exemptions, but under the statute may refuse disclosure if the withheld records satisfy one exemption. *See generally* 5 U.S.C. § 552(b).

**A.**

The ACLU first claims that the withheld information is not exempt from FOIA because it has already been declassified and is available to the public. The ACLU points to three sets of declassified and released government documents that the ACLU believes contain the same information that the CIA has withheld from the requested CSRT documents: the OLC memoranda, the CIA Inspector General's report, and a CIA "Background Paper" released with the CIA Inspector General's report. The ACLU also argues that a fourth document, the leaked Red Cross report, although not an official government disclosure, contains the same information and is available to the public.

In its affidavit, the CIA asserts that despite the declassification and disclosure of some government documents, the specific operational details of the capture, detention, and interrogation of the "high value" detainees remain classified. Hilton Aff. ¶ 55, Aug. 28, 2009. The affidavit states that the declassified documents contain "descriptions of the enhanced interrogation techniques *in the abstract*" that are "of a qualitatively different nature than the conditions of confinement and interrogation techniques *as applied* described in the CSRT transcripts and detainee written statements." *Id*. at ¶ 70 (emphasis in original). The affidavit also asserts that the documents "discuss[] issues of detainee confinement, rather than specific *operational* details of the confinement of any specific detainee," and that although the disclosed documents "discuss the legality of specific proposed intelligence activities, they do not reveal the level of detail described in the [CSRT] transcripts and statements." *Id*. at ¶¶ 70, 71 (emphasis in original). The CIA also argues that under our opinion in *Fitzgibbon*, the leaked Red Cross report is irrelevant because it does not qualify as an official and documented disclosure by the government. *See*

911 F.2d at 765 (requiring, *inter alia*, "that the information requested must already have been made public through an official and documented disclosure" to compel release over an agency's otherwise valid exemption claim).

If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim. *Wolf*, 473 F.3d at 378; *Fitzgibbon*, 911 F.2d at 765. For information to qualify as "officially acknowledged," it must satisfy three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure. *Wolf*, 473 F.3d at 378; *Fitzgibbon*, 911 F.2d at 765. As we further explained in *Wolf*, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure. This insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs." 473 F.3d at 378 (citations and quotation omitted).

Review of the government documents cited by the ACLU supports the CIA's assertion that there are substantive differences between the disclosed documents and the information that has been withheld. The OLC memoranda contain descriptions of the enhanced interrogation techniques requested for use on the "high value" detainees, evaluations of physical and mental pain caused by those techniques, descriptions of "prototypical interrogations," and analyses of the techniques' potential effects if implemented in combination. The CIA Inspector General's report, which is heavily redacted, contains particular details from various interrogations, but does not include thorough descriptions of

any specific interrogations. The CIA "Background Paper," drafted to provide the Department of Justice with background information regarding the CIA program and a "generic description of the process," contains only general descriptions of the confinement conditions and interrogation techniques used by the CIA. Despite the ACLU's arguments to the contrary, none of these documents contains a comprehensive description of the actual capture, detainment, or interrogation of any specific detainee. The CIA affidavit asserts that there are substantive differences between the content of the publically released government documents and the withheld information. We find nothing in the record that discredits the agency's claim. According the agency's affidavit the substantial weight it is due regarding the details of the classified status of the disputed record, *see Wolf*, 473 F.3d at 374; *Miller*, 730 F.2d at 776; *Military Audit Project*, 656 F.2d at 738, we agree with the district court's conclusion that the information withheld by the government "is specific and particular to each detainee and would reveal far more about the CIA's interrogation process than the previously released records." *A.C.L.U.*, 664 F. Supp. 2d at 77.

As the ACLU readily admits, the Red Cross report was not released pursuant to a government declassification process, but was instead leaked to a journalist. We note at the outset that the Red Cross report is not a government document, and we are hard pressed to understand the ACLU's contention that the release of a nongovernment document by a nonofficial source can constitute a disclosure affecting the applicability of the FOIA exemptions. The distinction between an official government disclosure and references in an unofficial document from a nonofficial source is essential and would be fatal to the ACLU's argument even without the other shortcomings discussed with reference to the ACLU's other contentions. "[I]n the arena of intelligence and foreign relations there can be a critical difference between official and

unofficial disclosures." *Fitzgibbon*, 911 F.2d at 765. Because the Red Cross report was not "made public through an official and documented disclosure," the information it contains cannot be considered "officially acknowledged." *See Wolf*, 473 F.3d at 378 (requiring that "the information requested must already have been made public through an official and documented disclosure" to be officially acknowledged). As the Fourth Circuit has noted, "[i]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975). Similarly, a journalist's version of what a nongovernmental organization, such as the Red Cross, reports is hardly the same thing as an official government acknowledgment.

Neither the official government disclosures of the OLC memoranda and CIA reports nor the unofficial publication of the Red Cross report are sufficient to qualify the information withheld from the CSRT documents as "officially acknowledged." Therefore, despite the ACLU's claim that the information is already widely available to the public, we conclude that FOIA exemptions 1 and 3 validly apply.

**B.**

The ACLU also argues that the redacted information is not exempt from FOIA because the interrogation techniques and conditions of confinement withheld from the requested documents have been prohibited by the President. Relying on the Supreme Court's ruling in *C.I.A. v. Sims*, the ACLU argues that because the President banned the future use of the interrogation techniques and confinement conditions formerly authorized for use on the "high value" detainees, those techniques and conditions are no longer within the "Agency's

mandate to conduct foreign intelligence," and therefore not protectable "intelligence sources and methods." *See* 471 U.S. at 169-70.

*Sims*, the only case offered by the ACLU in support of this proposition, does not remotely support such a claim. The *Sims* decision does in fact discuss the breadth of the protection offered by exemption 3, but says nothing suggesting that the change in the specific techniques of intelligence gathering by the CIA renders unprotected sources and methods previously used. As the *Sims* Court stated, "[t]he 'plain meaning' of section 102(d)(3) may not be squared with any limiting definition that goes beyond the requirement that the information fall within the agency's mandate to conduct foreign intelligence." 471 U.S. at 169. In short, the *Sims* decision refutes rather than supports the ACLU's claim.

To the extent that the ACLU's claim rests on the ACLU's belief that the enhanced interrogation techniques were illegal, there is no legal support for the conclusion that illegal activities cannot produce classified documents. In fact, history teaches the opposite. Documents concerning surveillance activities later deemed illegal may still produce information that may be properly withheld under exemption 1. *See Lesar v. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980) (holding that although the FBI's surveillance "strayed beyond the bounds of its initial lawful security aim, that does not preclude the possibility that the actual surveillance documents and the Task Force materials that comment upon those documents may nevertheless contain information of a sensitive nature, the disclosure of which could compromise legitimate secrecy needs"). We conclude that the President's prohibition of the future use of certain interrogation techniques and conditions of confinement does not diminish the government's otherwise valid authority to classify

information about those techniques and conditions and to withhold it from disclosure under exemptions 1 and 3.

## C.

Next, the ACLU argues that the redacted information does not qualify as "sources or methods" under FOIA exemptions 1 and 3 because the government lacks the authority to classify information derived from the detainees' personal observations and experiences. The ACLU asserts that the government's ability to prevent the public release of the withheld information is derived solely from its continued detainment of the "high value" detainees at Guantanamo Bay; that the only thing preventing the detainees from speaking out about their personal experiences in CIA custody is their continued detention with no access to the public. The ACLU argues that indefinite detention cannot be a permissible justification for the classification of information.

The ACLU's argument is irrelevant to the reality that the information that the CIA wishes to withhold is within the government's control. Executive Order 12,958 granted the CIA the authority to classify information that was "under the control of the United States Government," defining control as "the authority of the agency that originates information, or its successor in function, to regulate access to the information." Exec. Order No. 12,958 §§ 1.1(a)(2), 6.1(s). Neither party disputes that the Department of Defense and the CIA retain exclusive authority to regulate access to the requested documents. The fact that the information originated from detainees then in the government's custody has no relevance to the unquestionable fact that the information so obtained is in the government's control. Any documents generated in the process of interrogation are in the hands of the government and will remain subject to the government's authority whether the detainees are retained, released, or transferred. Not only

may the information within such records constitute intelligence in and of itself, it certainly may reveal the sources and methods of the government's acquisition. Even if the detainees were to be released, erstwhile detainees might embellish or outright lie about their experiences, illustrating the government's continuing interest in keeping its own records secret. There is simply no legal support for the ACLU's argument that the government lacks the authority to classify the information withheld from the CSRT documents.

**D.**

Finally, in addition to arguing that the information withheld from the requested documents does not qualify for FOIA exemptions 1 and 3 as "intelligence sources or methods," the ACLU also argues the government cannot withhold the information under exemption 1 because public release of the information would not damage national security.[3] Quoting an opinion from the United States District Court for the District of Columbia, the ACLU argues that "if the information has already been disclosed and is so widely disseminated that it cannot be made secret again, its subsequent disclosure will cause no further damage to the national security." *Washington Post v. U.S. Dep't of Defense*, 766 F. Supp. 1, 9 (D.D.C. 1991) (emphasis omitted). The ACLU also objects specifically to the government's assertion, made in the CIA affidavit, that the redacted information will harm national security because it could be used as propaganda by al Qaeda. The ACLU contends that this purpose is expressly prohibited by the same executive order upon which the government relies for its authority to classify the information.

---

[3]We reiterate that the government need prevail on only one exemption; it need not satisfy both.

As discussed above, the government may only withhold information under exemption 1 if that information is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and if that information is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The CIA asserts that the withheld information was properly classified pursuant to Executive Order 12,958. Executive Order 12,958, which authorizes the classification of "intelligence sources or methods," requires as a prerequisite to classification that disclosure of the information to be classified "reasonably could be expected to result in damage to the national security" and that the government must be "able to identify or describe the damage." Exec. Order No. 12,958 § 1.1(a)(4). Thus, the "intelligence sources or methods" withheld by the government are properly classified under Executive Order 12,958, and therefore exempt from disclosure under exemption 1, only if the CIA can establish that public disclosure of the withheld information will harm national security. *See* 5 U.S.C. § 552(a)(4)(B) (placing the burden on the agency to sustain its action under FOIA).

Because "[t]he assessment of harm to intelligence sources, methods and operations is entrusted to the Director of Central Intelligence, not to the courts," *Fitzgibbon*, 911 F.2d at 766, the government's burden is a light one. "[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). The CIA's arguments need only be both "plausible" and "logical" to justify the invocation of a FOIA exemption in the national security context. *See Wolf*, 473 F.3d at 374-75.

In this case the CIA identified five reasons why the disclosure of the withheld information might harm national security. Specifically, the CIA affidavit asserted that public release of the information would potentially damage national security by: (1) revealing the CIA's needs, priorities, and capabilities, Hilton Aff. ¶¶ 50-51; (2) degrading the CIA's ability to effectively question terrorist detainees, *id*. at ¶¶ 58-59; (3) providing terrorists with insight into the CIA's interrogation techniques, strategies, and methods, *id*. at ¶¶ 60-64; (4) damaging the CIA's relations with foreign governments, *id*. at ¶¶ 65-69; and (5) providing al Qaeda with material for propaganda, *id*. at ¶ 72.

Although the ACLU generally disputes the government's claim that public release of the withheld information would damage national security, the ACLU only specifically challenges the fifth potential harm identified by the CIA. The ACLU argues that the allegations of detainee abuse that the CIA has withheld from the CSRT documents would be effective propaganda for al Qaeda because those allegations are embarrassing to the United States and possibly violations of law. Executive Order 12,958, however, expressly prohibits the classification of information to "conceal violations of law" or to "prevent embarrassment to a person, organization, or agency." Exec. Order No. 12,958 § 1.7(a)(1)-(2).

We need not decide the issues raised by this argument. The government does not rely on the propaganda justification alone. The CIA affidavit identified four other potential harms that the government argues also justify withholding the information under FOIA exemption 1.

Even ignoring the propaganda justification, the CIA's affidavits establish that public disclosure of the withheld information "reasonably could be expected to result in damage to the national security." Exec. Order No. 12,958

§ 1.1(a)(4). The CIA asserts that the public disclosure of the withheld information may degrade the CIA's ability to interrogate detainees, improve al Qaeda's insight into the United States's intelligence activities, and hinder the CIA's ability to obtain assistance from foreign nations. These potential harms all pertain to the CIA's core mission of collecting and analyzing intelligence that reveals the plans, intentions and capabilities of the nation's enemies. According substantial weight and deference to the CIA's affidavit, *see Wolf*, 473 F.3d at 374, we conclude that it is both plausible and logical that the disclosure of information regarding the capture, detention, and interrogation of detainees would degrade the CIA's ability to carry out its mission. Having concluded that the CIA's arguments are both "plausible" and "logical," and finding no evidence in the record to support the opposite conclusion, no further investigation is required. *See Larson*, 565 F.3d at 865 ("If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.").

Finally, the ALCU's argument that the information withheld by the CIA is "so widely disseminated" that it could not cause harm to national security is foreclosed by our requirement, discussed above, that information be "officially acknowledged." *See Wolf*, 473 F.3d at 378. The "officially acknowledged" test recognizes that even if information exists in some form in the public domain that does not mean that official disclosure will not cause harm cognizable under a FOIA exemption. *Id.* To the extent that the ALCU relies on the government's official disclosures in the OLC memoranda and CIA reports, we have repeatedly rejected the argument

that the government's decision to disclose some information prevents the government from withholding other information about the same subject. *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 930-31 (rejecting plaintiffs' argument that the government's release of some detainees' names estopped the government from withholding the names of other detainees); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001) ("The fact that some 'information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations.'") (quoting *Fitzgibbon*, 911 F.2d at 766)). Because the release of the information withheld by the CIA "reasonably could be expected to result in damage to the national security," we conclude that the information may be withheld under FOIA exemption 1.

**E.**

The district court, relying on the CIA affidavit, held that the redacted information qualified as "intelligence sources or methods" under exemptions 1 and 3, *A.C.L.U.*, 664 F. Supp. 2d at 76-78, and we agree. The CIA affidavit described, in general terms but on a document-by-document basis, the information withheld from each responsive document. Hilton Aff. ¶¶ 27-34. That information included: information regarding the capture of detainees; the detainees' confinement conditions and locations; questions posed to detainees that would reveal intelligence interests of the United States; intelligence information provided by detainees; information relating to the collection, analysis, and dissemination of foreign intelligence; and information regarding the foreign relations and foreign activities of the United States. *Id*. For each category of information in each document, the CIA specified whether the redacted information was classified pursuant to Executive Order 12,958 or to the authority granted by the National Security Act of 1947. *Id*.

In the CIA affidavit, Hilton declared that she had personally reviewed the redacted information and affirmed that it was currently and properly classified. *Id*. at ¶ 48. She further stated that the redacted information described the actual, operational implementation of CIA "intelligence sources and methods" and that the disclosure of the withheld information would reveal the United States's intelligence needs, priorities and capabilities. *Id*. at ¶¶ 49-51. In addition, Hilton avowed that disclosure would harm national security by advising foreign government services and other hostile organizations of the United States's intelligence operations, making future intelligence operations more difficult and more dangerous. *Id*. at ¶ 51. Specifically, Hilton stated that release of the redacted information was reasonably likely to degrade the CIA's ability to effectively interrogate terrorist detainees and to undermine the CIA's ability to obtain the cooperation of foreign governments. *Id*. at ¶ 58.

Based on the strength of the CIA affidavit, we hold that the government properly invoked FOIA exemptions 1 and 3. The CIA explained with sufficient detail why the withheld information qualifies as "intelligence sources or methods" and adequately described the potential harm to national security that could result from the information's public disclosure. Nothing in the CIA's affidavit is contradicted by the record and we find no evidence of bad faith by the government. We conclude that summary judgment was warranted on the basis of the CIA's affidavit alone.

### III. *In Camera* Review

Finally, we consider the ACLU's argument that the district court erred by failing to perform *in camera* review of the redacted information. This court reviews a district court's decision whether to conduct *in camera* review of FOIA documents for abuse of discretion. *Larson*, 565 F.3d at 869;

*Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008). Although Congress provided district courts the option to conduct *in camera* review under FOIA, the statute does not compel the exercise of that option. *Larson*, 565 F.3d at 869 (citing 5 U.S.C. § 552(a)(4)(B)). "Congress intended to impose no mandates upon the trial court, but instead leave the decision of whether to conduct *in camera* inspection to the broad discretion of the trial judge." *Center for Auto Safety v. E.P.A.*, 731 F.2d 16, 20 (D.C. Cir. 1984). "If the agency's affidavits 'provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.'" *Larson*, 565 F.3d at 870 (quoting *Hayden v. N.S.A.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). "When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Hayden*, 608 F.2d at 1387. *In camera* inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that "it can't hurt." *Larson*, 565 F.3d at 870.

The ACLU claims that *in camera* review of the withheld information is appropriate in this case because there is evidence of bad faith by the CIA. *See Spirko v. U.S. Postal Service*, 147 F.3d 992, 996 (D.C. Cir. 1998) (stating that "*in camera* inspection may be particularly appropriate when . . . there is evidence of bad faith on the part of the agency"). The ACLU argues that differences between the government's first and second redactions of the CSRT documents establish that the government acted in bad faith. In the ACLU's view, information disclosed during the second FOIA review demonstrates that the CIA improperly withheld information during the initial review, proving that the CIA abused its classification authority and therefore acted in bad faith.

The ACLU's claim that the government acted in bad faith is meritless. None of the information originally redacted but later disclosed after the documents were reprocessed demonstrates that the CIA improperly withheld information. The additional disclosures cited by the ACLU all pertain to methods of interrogation and conditions of confinement used or allegedly used by the CIA; the same kind of information that the government still wishes to withhold under exemptions 1 and 3. *See, e.g.*, Brief for the Plaintiffs-Appellant at 41-42, *A.C.L.U. v. Dep't of Defense*, No. 09-5386 (D.C. Cir. Feb. 24, 2010) (citing Abu Zubaydah's complaints about the injuries he incurred "after months of suffering and torture," Al Nishiri's allegation that he can no longer walk more than ten minutes, and Zubaydah's allegations that he gave false answers during interrogations). The government's later decision to declassify these specific detainee allegations does not prove that they were originally improperly withheld or that the government acted in bad faith. To the contrary, we find that the government demonstrated good faith by voluntarily reprocessing the documents after the President declassified the OLC memoranda and the CIA Inspector General's report. As in previous FOIA cases, we decline to penalize a government agency for voluntarily reevaluating and revising its FOIA withholdings. *See Military Audit Project*, 656 F.2d at 753-54 (rejecting the petitioner's argument that the government's admission of error and release of additional information demonstrated that the agency was fallible and its affidavits suspect).

We agree with the district court that the CIA affidavit is sufficiently detailed that *in camera* review is not necessary and that there is no evidence of bad faith. *See A.C.L.U.*, 664 F. Supp. 2d at 79. The affidavit sets forth with specificity the information withheld and the reasons preventing its disclosure. *See* Hilton Aff. ¶¶ 26-34. The district court did

not abuse its discretion by granting the government's motion for summary judgment without conducting *in camera* review.

## IV. Conclusion

We affirm the district court's grant of summary judgment for the Department of Defense and CIA. We agree that the specific details of the "high value" detainees' capture, detention, and interrogation are exempt from FOIA disclosure under exemptions 1 and 3. The district court acted within its broad discretion when it declined to perform *in camera* review.

*So ordered.*