**AMERICAN CIVIL LIBERTIES UNION and American Civil Liberties Union Foundation, Appellants**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Appellees.**

No. 15–5217.

United States Court of Appeals, District of Columbia Circuit.

April 21, 2016.

Jameel Jaffer, Hina Shamsi, American Civil Liberties Union, New York, NY, Arthur B. Spitzer, American Civil Liberties Union of the National Capital Area, Washington, DC, for Plaintiff–Appellant.

Thomas Gary Pulham, Matthew M. Collette, Sharon Swingle, U.S. Department of Justice, Washington, DC, for Defendant–Appellee.

Before: TATEL and GRIFFITH, Circuit Judges, and SENTELLE, Senior Circuit Judge.

***JUDGMENT***

PER CURIAM.

This appeal from the order of the United States District Court for the District of Columbia was presented to the court and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the District Court be affirmed.

In this long-running Freedom of Information Act suit, the American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, the ACLU) seek records from the Central Intelligence Agency related to the United States' use of armed drones to conduct "targeted killings." We need not recount here much of the procedural and factual history leading to the present appeal. Suffice it to say that the ACLU now seeks two categories of documents: (1) certain "final legal memoranda (as well as the latest version of draft legal memoranda which were never finalized) concerning the

U.S. Government's use of armed drones to carry out premeditated killings"; and (2) certain intelligence products "containing charts or compilations about U.S. Government strikes sufficient to show the identity of the intended targets, assessed number of people killed, dates, status of those killed, agencies involved, the location of each strike, and the identities of those killed if known." Declaration of Martha M. Lutz, Chief of the Litigation Support Unit, Central Intelligence Agency, at ¶ 6 (Nov. 25, 2014). After searching for responsive records, the CIA identified twelve legal memoranda responsive to the first part of the request and "thousands of records" responsive to the second. *Id.* ¶¶ 8–9. The agency refused to release any records, save for a redacted version of a May 2011 white paper by the Department of Justice. The agency then moved for summary judgment before the district court, arguing that the redacted portions of the DOJ White Paper and the remaining records were exempt from disclosure under FOIA Exemption 1 (pertaining to classified records), FOIA Exemption 3 (pertaining to records specifically exempted from disclosure by statute), and/or FOIA Exemption 5 (pertaining to agency memoranda subject to certain litigation privileges). After reviewing a public and a classified affidavit regarding the agency's justifications for nondisclosure, the district court granted the CIA's motion. The ACLU now appeals. Because we agree that the withheld records may be shielded from disclosure under FOIA Exemption 1, we affirm.

We review the grant of summary judgment de novo. *See Mobley v. CIA,* 806 F.3d 568, 574 (D.C.Cir.2015). In FOIA cases, "[s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Department of State,* 565 F.3d 857, 862 (D.C.Cir.2009) (internal quotation marks omitted). Although FOIA authorizes district courts to review agency records *in camera* to determine if they are properly withheld, *see* 5 U.S.C. § 552(a)(4)(B), this court has said that in national security cases like this one, " '*in camera* review is neither necessary nor appropriate' " when an agency has met its burden through reasonably specific affidavits, *Mobley,* 806 F.3d at 588 (quoting *Larson,* 565 F.3d at 870); *see ACLU v. Department of Defense,* 628 F.3d 612, 626 (D.C.Cir.2011) ("*In camera* inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that it can't hurt." (internal quotation marks omitted)); *Hayden v. National Security Agency,* 608 F.2d 1381, 1387 (D.C.Cir.1979) ("In camera review is a 'last resort' to be used only when the affidavits are insufficient for a responsible De novo decision.").

Here, in both its public and classified affidavits, the CIA invokes FOIA Exemption 1 to protect all of the requested records from disclosure. Pursuant to that exemption, agencies may withhold records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and that "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526 currently governs the classification of government records. 75 Fed. Reg. 707 (Dec. 29, 2009). Under that order's substantive criteria, information may be classified if it "pertains to" one or more of eight categories of information, *id.* § 1.4, and if an original classification authority has "determine[d] that the unau-

thorized disclosure of the information reasonably could be expected to result in [identifiable or describable] damage to the national security," *id.* § 1.1(a)(4). Relevant here, information may be classified if it "pertains to" "intelligence activities ... [,] sources or methods," and/or "foreign relations or foreign activities of the United States." *Id.* § 1.4(c), (d). As this court has previously noted, "pertains is not a very demanding verb." *Judicial Watch, Inc. v. Department of Defense,* 715 F.3d 937, 941 (D.C.Cir.2013) (internal quotation marks omitted). And "[b]ecause courts lack the expertise necessary to second-guess ... agency opinions in the typical national security FOIA case, [they] must accord substantial weight to an agency's affidavit concerning the details of the classified status of ... disputed record[s]." *ACLU,* 628 F.3d at 619 (internal quotation marks and citation omitted).

Of course, even if information falls within an exemption, an agency may be forced to disclose it if the agency has already "officially acknowledged" the information. *Mobley,* 806 F.3d at 583 (internal quotation marks omitted). This circuit applies a three-part test to determine when an agency has "officially acknowledged" requested information: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Id.* (internal quotation marks omitted). This test is quite strict. "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. CIA,* 473 F.3d 370, 378 (D.C.Cir.2007). This court has explained that this "insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs." *Id.* (internal quotation marks omitted). In each case where a FOIA requester contends that an agency has acknowledged information it seeks to withhold, the burden is on the requester to point to specific information in the public domain that "appears to duplicate that being withheld." *Id.* (internal quotation marks omitted).

Having carefully and thoroughly reviewed the CIA's classified affidavit, we affirm the district court's grant of summary judgment largely for the reasons set forth in its opinion. In brief, the agency has satisfied its burden to show that the records are properly classified under Executive Order 13,526, and that they are, therefore, properly withheld under FOIA Exemption 1. The affidavit describes, in considerable detail, the records and the agency's reasons for withholding them. *See Larson,* 565 F.3d at 862. The classified affidavit amply demonstrates that the information withheld "pertains to" "intelligence activities ... [,] sources or methods" and/or "foreign relations or foreign activities of the United States," Exec. Order 13,526, § 1.4(c), (d), and that its disclosure could reasonably be expected to damage national security, *id.* § 1.1(a)(4). The agency's explanations as to why the records are classified are both "logical" and "plausible," and uncontroverted by evidence in the record. *Larson,* 565 F.3d at 862 (internal quotation marks omitted). The ACLU never argues in its brief that the agency exhibited bad faith. But to the extent it intended to suggest bad faith by pointing out that this court previously overruled the CIA's initial refusal to confirm or deny the existence of responsive records, we are unpersuaded that such attempt exhibited bad faith, and, given the considerable detail presented in the CIA's classified affidavit, we believe that attempt

presents an insufficient reason to doubt the veracity of the agency's current assertions about the contents of the records and their classified status. The CIA's affidavit also adequately demonstrates that there are no "reasonably segregable portion[s]" of the documents that could be disclosed. 5 U.S.C. § 552(b).

Finally, the ACLU has failed to point to any officially acknowledged information that appears to duplicate or match that being withheld. The district court was, accordingly, well within its discretion to decline to review the documents *in camera*. *See Mobley*, 806 F.3d at 588. For the same reasons, we find it unnecessary to review the documents to determine whether the information has been properly withheld. *See id.* ("When an agency meets its burden through affidavits, *in camera* review is neither necessary nor appropriate, and *in camera* inspection is particularly a last resort in national security situations like this case." (internal quotation marks and alteration omitted)). Nothing in the ACLU's Rule 28(j) letter, dated April 13, 2016, alters that assessment. *See* ACLU's 28(j) Letter at 1–2 (Apr. 13, 2016).

The ACLU's arguments regarding the standards that we should apply in this case are largely unavailing and, in some instances, run contrary to our precedent. To take just one example, the ACLU advocates a narrow reading of the phrase "pertains to" in Executive Order 13,526 because, in its view, a broad reading would "give the CIA a near-categorical exemption from the FOIA—something Congress considered but rejected." ACLU Br. 17. It adds that a broad construction would "effectively sanction secret law" in contravention of FOIA's "principal purposes." *Id.* at 18 (internal quotation marks omitted). These arguments, however, ignore this court's prior statement that "pertains

is not a very demanding verb." *Judicial Watch*, 715 F.3d at 941 (internal quotation marks omitted). They also misunderstand the role of the Executive Order in our analysis. That order has relevance beyond FOIA, and our task is not to construe it in light of FOIA's purposes. Instead, our task in this FOIA suit is to determine whether the records the CIA seeks to withhold under FOIA Exemption 1 are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). As noted above, the CIA's affidavit adequately establishes that the records satisfy those criteria.

Finally, we decline the ACLU's post-oral argument invitation to remand the case for further consideration in light of the government's recent announcement that "in the coming weeks, the Administration will publicly release an assessment of combatant and non-combatant casualties resulting from strikes taken outside areas of active hostilities since 2009," and that "[g]oing forward, these figures will be provided annually." Lisa O. Monaco, Assistant to the President for Homeland Security and Counterterrorism, Evolving to Meet the New Terrorist Threat (Mar. 7, 2016), available at https:// www.whitehouse.gov/the-press-office/2016/03/07/ remarks-lisa-o-monaco-council-foreign-relations-kenneth-moskow-memorial; *see* ACLU's 28(j) Letter at 2 (Mar. 14, 2016). As an initial matter, we cannot know at this juncture whether the government will actually disclose this information or how that information will be presented. It is, therefore, not yet possible to determine whether the information the government plans to release will duplicate that being withheld or undermine the government's assertion that disclosing summary strike data can reasonably be expected to harm national secu-

rity. More importantly, however, the question in FOIA cases is typically whether an agency improperly withheld documents at the time that it processed a FOIA request. *See Bonner v. Department of State*, 928 F.2d 1148, 1152 (D.C.Cir. 1991). Although there may be some circumstances in which it is appropriate to consider new information that comes to light during litigation, courts must be wary of creating "an endless cycle of judicially mandated reprocessing" of FOIA requests, lest they undermine the Act's "premium on the rapid processing of [such] requests." *Id.* Under the circumstances presented here, including that the case was already submitted following oral argument by the time the government announced its intention to disclose new information, we believe that it would be inappropriate to remand the case for further processing. If the information that the government ultimately releases undercuts the government's exemption claims, the ACLU can file a new FOIA request.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.